UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDER BEAR and DEVIN PATRICK,

    Plaintiffs,

v.

CREDIT ACCEPTANCE CORPORATION AND RITE TRACK AUTO DETAILING, INC.,

    Defendant.

_____

Case No. 21-cv-12353-JEL-JJCG
District Judge Judith E. Levy
Magistrate Judge Jonathan J.C. Grey

### REPORT AND RECOMMENDATION ON CREDIT ACCEPTANCE CORPORATION'S MOTION TO COMPEL ARBITRATION AND DISMISS THE CASE, OR IN THE ALTERNATIVE, TO STAY ALL PROCEEDINGS

Alexander Bear and Devin Patrick bring a complaint against Credit Acceptance Corporation ("CAC") and Rite Track Auto Detailing, Inc ("RTADI"), asserting Truth in Lending Act, Michigan Consumer Protection Act, and misrepresentation claims. (ECF No. 1.) On December 6, 2021, CAC moved to compel arbitration and dismiss the case, or in the alternative, to stay all proceedings until completion of private arbitration. (ECF No. 15.)

1

Bear and Patrick responded (ECF No. 19), and CAC replied (ECF No. 22). The Court heard oral argument on February 23, 2022. (ECF No. 21.)

The Court **RECOMMENDS** that CAC's motion to compel arbitration and dismiss the case without prejudice be **GRANTED** and that CAC's motion in the alternative to stay all proceedings be **DENIED**.

**I.     Background**

On September 14, 2021, Bear and Patrick signed a retail installment contract ("Retail Installment Contract") with RTADI for the purchase of a 2015 Ford Fusion. (ECF No. 19-2, PAGEID.104.) RTADI assigned the contract to CAC. (*Id.* at PAGEID.107.) The contract contains an arbitration clause, which allows a right to reject arbitration:

> If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

(ECF No. 19-2, PAGEID.108.)

Bear and Patrick's initials are directly below the arbitration clause. *Id.* Bear and Patrick timely mailed a written rejection notice, solely signed by their attorney. (ECF No. 19-3.) In the September 24, 2021 notice, the

2

plaintiffs' attorney wrote, "I have been retained to represent Alexander Bear & Devin Patrick . . . My clients are opting out of the arbitration clause in the Credit Acceptance contract." (*Id.* at PAGEID.110.) The attorney further explained that his clients sought cancellation of the contract and that the vehicle could be returned. *Id.*

Bear and Patrick later defaulted on the contract, failing to make all the required monthly payments. (ECF No. 15, PAGEID.63.) On October 5, 2021, Bear and Patrick filed a complaint against Credit Acceptance, RTADI, and First Automotive Service Corporation.[1] (ECF No. 1.)

In its motion to compel arbitration, CAC argues that the plaintiffs' rejection notice is ineffective because it was not signed by the plaintiffs and therefore did not comply with the Retail Installment Contract requirements. (ECF No. 15.) The plaintiffs contend that they properly rejected the arbitration clause because authorized representatives may sign contracts for their clients. (ECF No. 19.) Additionally, at oral argument, CAC clarified that it would no longer sought dismissal with prejudice and instead requested dismissal without prejudice.

---

[1] On December 16, 2021, Bear and Patrick voluntarily dismissed First Automotive Service Corporation from the action. (ECF No. 17.)

3

## II.     Legal Standard

The Federal Arbitration Act ("FAA") provides that commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The party seeking to enforce an arbitration agreement may request that litigation be stayed until the terms of the arbitration agreement have been fulfilled. *Id.* § 2.

In assessing a motion to compel, a court must make four determinations. *Id.* Specifically, a court must determine: (1) whether the parties agreed to arbitration; (2) the scope of that agreement to arbitrate; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) whether to stay the remainder of the proceedings pending arbitration if it concludes that some, but not all, of the claims in the action are subject to arbitration. *Id.*; *see also Glazer v. Lehman Bros.*, 394 F.3d 444, 451 (6th Cir. 2005) (citations omitted).

Moreover, courts examine "arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007).

Finally, to survive a motion to dismiss under Federal Rule of Procedure 12(b)(6), a plaintiff must comply with Rule 8(a)(2), which requires a short and plain statement of the claim showing that the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A plaintiff must also illustrate the grounds of his entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted).

When assessing a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Although a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (citations omitted).

In reviewing motions to dismiss, courts may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir. 2011) (quoting *Bassett Nat'l Collegiate Athletic Ass'n*, 528 F.3d at 430 (6th Cir. 2008)).

5

Since Bear and Patrick's claims focus on the Retail Installment Contract, the Court will accordingly consider the Retail Installment Contract.

### III. Analysis

**A. Four Factors**

Upon consideration of the four factors, the Court finds that arbitration of Bear and Patrick's claims should be compelled.

First, the parties disagree as to whether they agreed to arbitrate since Bear and Patrick's counsel, rather than Bear and Patrick, signed the rejection notice. The parties both signed the Retail Installment Contract that contained an arbitration clause, and neither party disputes the validity of the arbitration clause. (ECF No. 19, PAGEID.97.) For the reasons discussed in the next section, the Court finds that Bear and Patrick's rejection was invalid. Since the validity of the arbitration clause is not disputed and the plaintiffs' rejection notice was ineffective, the parties therefore agreed to arbitrate.

Second, with respect to the arbitration agreement's scope, the arbitration clause expressly provides for arbitration of "any Dispute." (ECF No. 19-2, PAGEID.108.) The clause further states that "'Dispute' shall have the broadest meaning possible, and includes contract claims, and claims based on tort violations of laws, statutes, ordinances or regulations or any

other legal or equitable theories." *Id.* Accordingly, the arbitration clause encompasses all the claims included in Bear and Patrick's complaint.

Third, with respect to Congress' intent, nothing suggests that Congress intended to exempt Bear and Patrick's Truth in Lending Act, Michigan Consumer Protection Act, and misrepresentation claims from arbitration. In *West v. Legacy Motors, Inc.*, the court found no evidence that Congress excluded the plaintiff's claims, which were asserted on the same basis as Bear and Patrick's. No. 16-12101, 2016 WL 6476458, at *3 (E.D. Mich. Nov. 2, 2016). Further, the party opposing arbitration bears the burden "to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987). Bear and Patrick did not address the issue, and the Court accordingly concludes that Congress did not preclude arbitration of Bear and Patrick's claims.

Fourth, with respect to the determination of which claims are subject to arbitration, all of Bear and Patrick's claims are subject to arbitration. The Court further concludes that CAC is entitled to dismissal rather than a stay of this litigation. When claims are referred to arbitration, the FAA provides for a stay of court proceedings until arbitration takes place. 9 U.S.C. § 3. However, when all claims are subject to arbitration, courts may dismiss the

complaint. *Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999) (upholding dismissal of "litigation in which all claims are referred to arbitration"); *see also Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x. 972, 975 (6th Cir. 2009) (rejecting the argument that the FAA requires district courts to stay suits pending arbitration rather than dismiss them). Further, district courts in the Sixth Circuit generally enforce arbitration agreements by ordering dismissal without prejudice. *Shammami v. Broad St. Sec., Inc.*, 544 F. Supp. 2d 585, 588 n.6 (E.D. Mich. 2008) (citations omitted). Here, all of Bear and Patrick's claims are subject to arbitration. The Court thus recommends dismissal without prejudice.

### B. Effectiveness of Bear and Patrick's Rejection Notice

The Court must decide the validity of Bear and Patrick's rejection notice. If the Court finds that the parties contract required actual signatures of the parties for a valid rejection notice, arbitration must occur.

The issue before the Court is whether Bear and Patrick's rejection notice is valid. The Michigan Supreme Court mandates that "unambiguous contracts are not open to judicial construction and must be *enforced as written.*" *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 468 (Mich. 2005) (emphasis in original). Courts must enforce unambiguous contractual provisions as written unless it would violate law or public policy. *Id.* at 470.

Here, the parties do not dispute that they signed the Retail Installment Contract that contained an arbitration clause. (ECF No. 19, PAGEID.97.) The arbitration clause expressly requires signature by the buyers and does not mention signatures by an authorized representative of the buyers. (ECF No. 19-2, PAGEID.108.)

Moreover, courts have found party's actions to be ineffective for failure to comply with a contract's plain language. *E.g.*, *Allen v. Watts*, No. 2:19-CV-12024, 2021 WL 3053383, at *1 (E.D. Mich. July 20, 2021) (rejecting the validity of the plaintiff's emailed settlement notice because it did not comply with the insurance policy's requirement to do so by certified mail).

Bear and Patrick's argument that an authorized representative may sign on behalf of an authorized person pursuant to MCL § 440.3402. (ECF No. 19, PAGEID.98–99.) MCL § 440.3402 is inapplicable here. MCL § 440.3402 is a statute in Article 3 of Michigan's Uniform Commercial Code that governs negotiable instruments, or "unconditional promise[s] or order[s] to pay a fixed amount of money." MCL § 440.3104(1). Examples of negotiable instruments include notes and checks. *Mary Margaret Bibler v. Arcata Invs. 2, LLC*, No. 263024, 2005 WL 3304127, at *4 (Mich. Ct. App. Dec. 6, 2005); *Hoerstman Gen. Contracting, Inc. v. Hahn*, 711 N.W.2d 340,

345 (Mich. 2006).[2] Instead of a negotiable instrument, a retail installment contract exists here. The Retail Installment Sales Act governs the Retail Installment Contract. MCL § 445.851 *et seq.* The Retail Installment Sales Act allows authorized representatives to sign retail installment contracts on behalf of a buyer. *Id.* at § 445.851(3).

Although MCL § 445.851(3) of the Act permits authorized representatives to sign retail installment contracts on behalf of a buyer, the Court cannot modify an unambiguous arbitration clause that requires the buyer's signature to reject an arbitration clause. MCL § 445.851; *Rory*, 473 Mich. at 468; *Allen*, 2021 WL 3053383, at *1. Plain, unambiguous language of the parties' contract prevails. *Rory*, 473 Mich. at 468

Specifically, the contract stated, "A rejection notice is only effective if it is signed by all buyers." (ECF No. 19-2, PAGEID.108.) The Court cannot modify the contract to add "or their authorized representative" into the arbitration clause. *Collins v. Nat'l Gen. Ins. Co.*, 834 F. Supp. 2d 632, 636 (E.D. Mich. 2011) (citations omitted) ("Where the terms of an insurance

---

[2] In contrast, certain mortgages, certificates of deposit, and guaranties are not negotiable instruments. *Al-Raeis v. Aurora Bank, FSB*, No. 316269, 2014 WL 6953557, at *4 (Mich. Ct. App. Dec. 9, 2014); *Trader v. Comerica Bank*, 809 N.W.2d 429, 433 (Mich. 2011); *National Bank of Detroit v. Alford*, 237 N.W.2d 592, 593 (1975).

contract are unambiguous, courts must enforce the terms of the contract as written—neither implying what is absent nor excising what is present.")

Moreover, the cases on which Bear and Patrick rely are factually distinguishable from the case at hand. Bear and Patrick cite *Abbonizio v. Bank of Am., NA*, which arose from a misappropriation of funds by the plaintiffs' attorney in which the attorney endorsed a check on his clients' behalf. No. 330022, 2017 WL 2390647, at *1 (Mich. Ct. App. June 1, 2017). The court concluded that the attorney's signature was valid because the plaintiffs had signed a retainer agreement that granted power of attorney. *Id.* at *4. Bear and Patrick also cite *Michigan Basic Prop. Ins. Ass'n v. Washington*, in which the court similarly found that the signature on a check of the plaintiff's attorney bound the plaintiff because there was power of attorney. *Michigan Basic Prop. Ins. Ass'n*, No. 299597, 2012 WL 205753, at *8 (Mich. Ct. App. Jan. 24, 2012). Neither *Abbonizio* nor *Michigan Basic Prop. Ins. Ass'n* pertained to contracts that required actual signature by a particular party.

Accordingly, the Court finds that Bear and Patrick submitted an invalid rejection notice. Further, the parties contract requires arbitration of each of Bear and Patrick's claims.

11

## IV.   Conclusion

For the reasons set forth above, the Court **RECOMMENDS** that CAC's motion to compel arbitration and dismiss the case without prejudice be **GRANTED** and that CAC's motion in the alternative to stay all proceedings be **DENIED**.

Dated:   March 3, 2022                              s/**Jonathan J.C. Grey**
                                                    Jonathan J.C. Grey
                                                    United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.