UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALEXANDER BEAR, *et al.*,, | Case No. 21-12353 |
| Plaintiffs, | F. Kay Behm |
| v. | United States District Judge |
| CREDIT ACCEPTANCE CORPORATION, *et al.*, | Jonathan J.C. Grey[1] United States Magistrate Judge |
| Defendants. | |
| _____ / | |

**OPINION AND ORDER ACCEPTING AND ADOPTING**
**MARCH 3, 2022 REPORT AND RECOMMENDATION (ECF No. 23)**

**I.   PROCEDURAL HISTORY**

Plaintiffs filed this action against Credit Acceptance Corporation (CAC) and Rite Track Auto Detailing, Inc.  (ECF No. 1).  Plaintiffs bring claims for violations of the Truth in Lending Act and the Michigan Consumer Protection Act, along with misrepresentation and breach of contract claims.  *Id*.  Defendant, Credit Acceptance Corporation, moved to compel arbitration pursuant to the parties' contract.  (ECF No. 15).  District Judge Judith E. Levy, to whom this matter was previously assigned, referred this motion to then Magistrate Judge Jonathan J.C.

---

[1] At the time the Report and Recommendation in this matter was issued, Jonathan J.C. Grey was a United States Magistrate Judge.  Judge Grey has since been elevated to the United States District Court for the Eastern District of Michigan.

Grey for report and recommendation. (ECF No. 16). Judge Grey recommends that the motion to compel arbitration be granted and that this case be dismissed. (ECF No. 23). Plaintiffs objected to the recommendation and CAC has responded to the objection. (ECF Nos. 24, 25). Additionally, Plaintiffs provided supplemental authority in support of their position, to which CAC has responded. (ECF Nos. 27, 28).

For the reasons set forth below, the court **ACCEPTS** and **ADOPTS** the Report and Recommendation, **GRANTS** the motion to compel arbitration, and **DISMISSES** this matter without prejudice.

**II.    LEGAL STANDARD**

A party may object to a magistrate judge's report and recommendation on dispositive motions, and a district judge must resolve proper objections under a de novo standard of review. 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b)(1)-(3). This court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*. "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to 'specify the part of the order, proposed findings, recommendations, or report to which [the party] objects' and to 'state the basis for the objection.'" *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018). Objections that

dispute the general correctness of the report and recommendation are improper. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

Moreover, objections must be clear so that the district court can "discern those issues that are dispositive and contentious." *Id*. (citing *Howard v. Sec'y of Health and Human Servs*., 932 F.2d 505, 509 (6th Cir. 1991*)); see also Thomas v. Arn*, 474 U.S. 140, 147 (1985) (explaining that objections must go to "factual and legal" issues "at the heart of the parties' dispute"). In sum, the objections must be clear and specific enough that the court can squarely address them on the merits. *See Pearce*, 893 F.3d at 346. And, when objections are "merely perfunctory responses ... rehashing ... the same arguments set forth in the original petition, reviewing courts should review [a Report and Recommendation] for clear error." *Ramirez v. United States*, 898 F.Supp.2d 659, 663 (S.D.N.Y. 2012); *see also Funderburg v. Comm'r of Soc. Sec*., No. 15-10068, 2016 WL 1104466, at *1 (E.D. Mich. Mar. 22, 2016) (Hood, J.) (noting that the plaintiff's objections merely restated his summary judgment arguments, "an approach that is not appropriate or sufficient").

### III. REPORT AND RECOMMENDATION

The Report and Recommendation ably sets forth the factual background and issue before the court:

On September 14, 2021, Bear and Patrick signed a retail installment contract ("Retail Installment Contract") with RTADI for the purchase of a 2015 Ford Fusion. (ECF No. 19-2, PAGEID.104.) RTADI assigned the contract to CAC. (*Id*. at PAGEID.107.) The contract contains an arbitration clause, which allows a right to reject arbitration:

> If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co- buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.

(ECF No. 19-2, PAGEID.108.)

Bear and Patrick's initials are directly below the arbitration clause. *Id*. Bear and Patrick timely mailed a written rejection notice, solely signed by their attorney. (ECF No. 19-3.) In the September 24, 2021 notice, the plaintiffs' attorney wrote, "I have been retained to represent Alexander Bear & Devin Patrick . . . My clients are opting out of the arbitration clause in the Credit Acceptance contract." (*Id.* at PAGEID.110.) The attorney further explained that his clients sought cancellation of the contract and that the vehicle could be returned. *Id*.

Bear and Patrick later defaulted on the contract, failing to make all the required monthly payments. (ECF No. 15, PAGEID.63.) On October 5, 2021, Bear and Patrick filed a complaint against Credit Acceptance, RTADI, and First Automotive Service Corporation.1 (ECF No. 1.)

4

> In its motion to compel arbitration, CAC argues that the plaintiffs' rejection notice is ineffective because it was not signed by the plaintiffs and therefore did not comply with the Retail Installment Contract requirements. (ECF No. 15.) The plaintiffs contend that they properly rejected the arbitration clause because authorized representatives may sign contracts for their clients. (ECF No. 19.) Additionally, at oral argument, CAC clarified that it would no longer sought [sic] dismissal with prejudice and instead requested dismissal without prejudice.

(ECF No. 23, PageID.151-152).

Judge Grey found that Plaintiffs' rejection of the arbitration clause was invalid because it was signed by their attorney and not by them personally, as required by the contract. *Id.* at PageID.155. He further determined that because the validity of the arbitration clause was not disputed, and the rejection was ineffective, the parties agreed to arbitrate their dispute. *Id*. Judge Grey also found that all the claims in the Complaint fell within the broad arbitration clause. *Id*. at PageID.155-156. Finally, he concluded that a dismissal was more appropriate than a stay of proceedings because all claims at issue were subject to arbitration. *Id*. at PageID.156-157.

## IV.   ANALYSIS

Plaintiffs object to only one aspect of the report and recommendation: Judge Grey's conclusion that the attorney's signature in place of the buyers' signatures was ineffective to reject the arbitration clause. (ECF No. 24,

5

PageID.163). Plaintiffs argue that Judge Grey inconsistently acknowledged on one hand that Mich. Comp. Laws § 445.853 allows an "authorized representative" to sign and enter into a retail installment sales contract but then, on the other hand, concluded that the court cannot "modify" the language in the contract that requires the buyers' signatures to reject the arbitration clause. *Id.* at PageID.165-165. According to Plaintiffs, the analysis is faulty because it does not take into account the entirety of the contract and the inconsistent results of allowing an authorized representative to sign the contract, but not to reject the arbitration clause. *Id*. at PageID.165. Plaintiffs suggest that the Report and Recommendation's conclusion would invalidate contracts signed by authorized representatives because the signature line in the agreement does not contain a space for an "authorized representative"—only spaces for the buyer and co-buyer. *Id*. at PageID.165.

    CAC contends that Plaintiffs misinterpret Judge Grey's analysis by failing to acknowledge that the Michigan statute amended basic contract principles to allow an authorized representative to sign a retail installment contract on a buyer's behalf and that same legal accommodation does not apply to the contractual requirement for buyers to sign the rejection of the arbitration provision. (ECF No. 25, PageID.169). Thus, CAC asks the court to adopt the

Report and Recommendation's conclusion that "[a]lthough MCL § 445.851(3) [sic[2]] of the Act permits authorized representatives to sign retail installment contracts on behalf of a buyer, the Court cannot modify an unambiguous arbitration clause that requires the buyer's signature to reject an arbitration clause."  (ECF No. 25, PageID.169, quoting ECF No. 23, PageID.159).

In the court's view, the Report and Recommendation correctly concludes that the plain language of the parties' agreement requires the buyers' signatures (not their authorized representative) for the rejection of the arbitration clause to be effective.  As Judge Grey noted, Michigan law mandates that "unambiguous contracts are not open to judicial construction and must be *enforced as written*." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 468 (2005).  Courts must enforce unambiguous contractual provisions as written unless it would violate law or public policy. *Id*. at 470.  The conclusion that the court must enforce the provision requiring the buyers to sign the arbitration clause rejection does not conflict with the statutory provision allowing an authorized representative to sign a retail installment sales contract.  Nothing in § 445.803 suggests that the parties may not agree to a different signature requirement for opting out of an arbitration

---

[2] The correct statutory provision is Mich. Comp. Laws § 445.853.

provision than the statute contemplates for entering into the contract in the first place.

Plaintiffs' reliance on *Morgan v. Sundance, Inc.*, --- U.S. ---; 142 S.Ct. 1708 (2022) is unavailing. In *Morgan*, the Supreme Court rejected the notion that a party must show prejudice in order to establish that the opposing party waived its right to enforce a contractual arbitration clause by litigating the case in court for too long. *Id*. More specifically, the Court concluded that courts may not create arbitration-specific procedural rules, such as requiring a showing of prejudice in the waiver analysis where prejudice is not required in the waiver analysis outside the arbitration context. *Id*. at 1713. Plaintiffs argue that Judge Grey similarly concluded that an attorney's signature could not substitute for the buyers' signature in light of a policy favoring arbitration. (ECF No. 27, PageID.191). Not so. Judge Grey's analysis specifically focused on the unambiguous language in the parties' agreement and enforced the contract as written. Simply because the result of that analysis favored arbitration does not suggest that Judge Grey improperly put his thumb on the scale in favor of arbitration. Indeed, the analysis in the Report and Recommendation is precisely what the Supreme Court mandated in *Morgan*: "a court must hold a party to its arbitration contract just as the court would to any other kind." *Id*. at 1713; *see also National Foundation for*

*Cancer Research v. A. G. Edwards & Sons, Inc.*, 821 F.2d 772, 774 (D.C. Cir. 1987) ("The Supreme Court has made clear" that the FAA's policy "is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism").

## V.   CONCLUSION

For the reasons set forth above, the court **ACCEPTS** and **ADOPTS** the Report and Recommendation, **GRANTS** the motion to compel arbitration, and **DISMISSES** this matter without prejudice.

**SO ORDERED**.

Date: August 14, 2023                             s/F. Kay Behm
                                                  F. Kay Behm
                                                  United States District Judge